Simon **POVERMAN**

v.

**WALNUT HILL PLAZA, INC.**

Civ. A. No. 3110.

United States District Court
D. Rhode Island.

Nov. 22, 1966.

F. Albert Starr, Cranston, R. I., for plaintiff.

Bruce M. Selya, Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

This is an action by the plaintiff, Simon Poverman, a citizen of the state of Connecticut and a resident of the city and county of Hartford in said state to recover commissions for procuring for the defendant, Walnut Hill Plaza, Inc., a Rhode Island corporation with its principal office and place of business in the city of Pawtucket, Rhode Island, a tenant for certain real estate situated in the city of Woonsocket, county of Providence, belonging to the said defendant.

At the time of the alleged transaction and throughout the dealings between the parties, the said plaintiff, a real estate broker licensed by the state of Connecticut, was not a holder of a Rhode Island real estate license as required by Title 5, Chapter 20.5 of the Rhode Island General Laws, 1956.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The plaintiff is and was at the time of the commencement of this action a citizen of the state of Connecticut; the defendant, Walnut Hill Plaza, Inc., is a Rhode Island corporation with a principal office and place of business in the city of Pawtucket, in the state of Rhode Island.

This is an action brought by the said plaintiff to recover certain commissions which he alleges are due by virtue of having procured a tenant for certain real estate belonging to the said defendant situated in the county of Providence, state of Rhode Island, more specifically, in the city of Woonsocket.

The plaintiff is and was at the time of the transaction and throughout the dealings between the parties, a real estate broker licensed by the state of Connecticut; that at no time was he a holder of a Rhode Island real estate license as required by Title 5, Chapter 20.5 of the Rhode Island General Laws, 1956.

The court further finds that the plaintiff was contacted by a Mr. Arthur Schatz, an attorney in Hartford, and was advised that the defendant might be interested in his services. As a result, he contacted a Mr. Charles Farrell, President of the defendant corporation, and arranged a meeting in Rhode Island which took place sometime in February 1962 at the site of the real estate in question, a shopping center in the city of Woonsocket. At this meeting, the plaintiff was given several documents such as books, pictures and a plot plan; as a result, he contacted clients including a Mr. Charles Bennington, owner and official of a discount house known as Big Ben, located in Poughkeepsie, New York. Mr. Bennington indicated interest and met the plaintiff in Hartford, Connecticut who then transported him to Woonsocket, Rhode Island where they conferred with Mr. Farrell and inspected the location in question. At this meeting, considerable discussion took place, most of which was between Mr. Farrell and Mr. Bennington. However, the plaintiff, on his own initiative, did speak of the merits of the defendant's location and gave his opinion in the light of his experience as a real estate broker; driving into Rhode Island and leaving the state, but nevertheless while still within its boundaries, and alone with Mr. Bennington, he did discuss the proposition with him, giving his views as to its advantages. In substance, as the plaintiff himself testified, he acted as a real estate broker, attempting to lease the property for the defend-

ant.[1] * * * The defendant has made a motion for dismissal pursuant to rule 41(b). In support of his motion, among other things, the defendant argues the plaintiff's status as a licensed broker in Rhode Island. The gravamen of the motion as it pertains to Title 5, Chapter 20.5 is that the plaintiff has acted as a real estate broker within the state of Rhode Island without a license as required by Title 5, Chapter 20.5 of the Rhode Island General Laws 1956 and should, therefore, be precluded from maintaining this suit for his commission in this court.

The court need not concern itself with Section 2 of this law which deals with those who are exempt from its provisions. The evidence was uncontradicted and the court so finds that the plaintiff was an independent non-resident broker who did not fall within any one of the exempt provisions of this section.

█ The controlling provisions of the Rhode Island General Laws read as follows:

*Title 5, Chapter 20.5, Section 16— Actions for recovery of fee or commission:*

"Except as otherwise provided no person shall maintain an action in any court of this state for the recovery of a commission, fee or compensation for any act done, the doing of which is prohibited under this chapter to other than licensed brokers, unless such person was licensed hereunder as a broker at the time of the doing of the act."

*Title 5, Chapter 20.5, Section 1—Definition of terms:*

(c) Real estate broker—"shall include all persons, partnerships, associations and corporations, foreign and domestic, who for a fee, commission, or other valuable consideration, or who with the intention or expectation of receiving or collecting the same, lists, sells, purchases, exchanges, rents, leases, appraises, or auctions any real estate, or the improvements thereon including options or who negotiates or attempts to negotiate any such activity; or who advertises or holds himself, itself or themselves out as engaged in such activities; or who directs or assists in the procuring of a purchaser or prospect calculated or intended to result in a real estate transaction * * *."

*Title 5, Chapter 20.5, Section 9— Non-Resident brokers:*

(B) * * * "that a licensed real estate broker may pay a commission to a licensed real estate broker of another state; provided, further, that such non-resident real estate broker does not conduct in this state any of the negotiations for which a fee, compensation or commission is paid."

The courts of Rhode Island have long adhered to the principal that a statute is to be construed with reference to its intended scope and to the purposes sought to be accomplished through the enactment thereof. When the language contained in a particular statute is free from ambiguity and expresses a definite and sensible meaning, that meaning is conclusively presumed to be the one which the legislature intended to convey, and in such circumstances that statute is to be interpreted literally. Cf. Davis v. Lussier, 86 R.I. 304, 134 A.2d 124; New England Die Co. v. General Products Co., 92 R.I. 292, 168 A.2d 150.

█ We are constrained to conclude that the pertinent provisions in question are to be interpreted so as to bar a nonresident broker, who is not licensed in Rhode Island, from maintaining a suit for his commission if he has done any act in Rhode Island in the furtherance of the prospective sales contract.

█ The term negotiation, within the statute prohibiting unlicensed real estate broker from maintaining action, has been interpreted as comprehending efforts of the broker to interest a prospective purchaser and bringing him to the point of being considered a likely buyer. See

1. Portions of decision not dealing with provisions of Title 5, Chapter 20.5, General Laws of Rhode Island, 1956—real estate brokers and salesmen omitted.

George Nangen & Co. v. Kenosha Auto Transport Corp., 238 F.Supp. 157 (D.C. 1965); Munson v. Furrer, 261 Wis. 634, 639, 53 N.W.2d 697 (1952).

In Tanenbaum v. Sylvan Builders, Inc., 29 N.J. 63, 148 A.2d 176 (1959) the court said at page 181:

"Any 'single act' in the execution of the authority to serve as broker in connection with the stimulation or consummation of a sale constitutes engaging in business and requires the actor to have a license."

For example in Campbell v. Duncan, 84 F.Supp. 732 (D.C.Ark.1949), a case practically on all fours with the instant case, the plaintiff was a broker from Mississippi, who took a prospective client from Oklahoma to Arkansas, where he was not licensed, to see some property of the defendant that was for sale. The court concluded that where a non-resident real estate agent not holding an Arkansas license brought a non-resident into the state and showed him the property, he was performing an act of a real estate broker within the state and could not recover commission for bringing the vendor and purchaser together.

Another case that is very similar is the case of Alford v. Raschiatore, 163 Pa.Super. 635, 63 A.2d 366. The facts were that a real estate agent, who had been trying without success to find a purchaser for property, said to the owner "my friend here, John, (Alford) gets around a good bit and might be able to find you someone [for]." Within a few days thereafter, John brought a non-resident to meet the defendant and see the property in question, which he later bought. The court held that John (Alford) could not maintain his action for a commission since he was acting as a real estate broker and didn't have a license as required by statute. At page 368 the court said:

" 'The common knowledge on the subject', of which the Court must take judicial notice, is that in probably the bulk of real estate transactions conducted by real estate agents or brokers, the agent's part amounts to little more

than finding and introducing to a party who is ready and willing to sell, a prospect who is ready, willing and able to buy."

The court went on to say that

"In giving the word 'negotiate' a broad interpretation, we are in accord with the courts in sister states which have construed similar real estate brokers licensing acts." In Baird v. Krancer, 138 Misc. 360, 246 N.Y.S. 85, 88, the court stated "[E]ssential feature of a broker's employment is to bring the parties together in an amicable frame of mind, with an attitude toward each other and toward the transaction in hand which permits their working out the terms of their agreement." See also Massie v. Dudley, 173 Va. 42, 3 S.E.2d 176, 179, 180 to the same effect.

In summation, what do we have here:

a) A non-resident real estate broker licensed in his state of Connecticut but not in Rhode Island;

b) Said non-resident broker bringing into this state a prospective tenant and introducing him to the defendant;

c) Together with the defendant inspecting the location in question and giving his views as to its advantages.

d) While with the prospective tenant driving into Rhode Island and while leaving but, nevertheless, while within its boundaries, acted as a real estate broker attempting to lease the property for the defendant.

e) The plaintiff while in Rhode Island acting as a real estate broker attempting to lease the property for the defendant.

Applying this to the case at bar, the court must conclude that we have a clear violation of the Rhode Island statute and though the plaintiff tries to argue it away on the ground of estoppel, he offers no evidence to support such a stand.

It is the opinion of the courts of Rhode Island that the legislature intended that upon a showing of non-compliance with the licensing provisions of the act, the court must decline to exercise its jurisdiction. Cottrell v. Lally,

94 R.I. 485, 182 A.2d 302. If a recovery in this action would be precluded in the state court, it likewise cannot be maintained in this court. Union Trust Co. v. Grosman, 245 U.S. 412, 38 S.Ct. 147, 62 L.Ed. 368.

This court is fully aware of the scope of its authority and responsibility as to a motion to dismiss pursuant to rule 41(b) of the Federal Rules of Civil Procedure.

■ In considering a defendant's motion to dismiss, the district court must weigh the evidence, draw inferences therefrom and, if it finds the evidence insufficient to make out a case for plaintiff, render a decision for the defendant on the merits—United States v. United States Gypsum Co. (D.C.D.C.1946) 67 F. Supp. 397, reversed on other grounds 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, rehearing denied 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147.

In the case of Palmentere v. Campbell, 344 F.2d 234, 1965 (8 Cir.) the court said at page 237:

"On a motion made under Rule 41(b), the judge, when sitting without a jury, must weigh and evaluate the evidence in the same manner as if he were making findings of fact at the conclusion of the entire case."

In the case of United States v. Huck Mfg. Co. (D.C.Mich.1964) 227 F.Supp. 791, at page 805, probable jurisdiction noted 379 U.S. 956, 85 S.Ct. 646, 13 L.Ed. 2d 552, the court said:

"The court in a non-jury case, on motion under Rule 41(b), is not required to review the evidence in the light most favorable to the Government; it is required only to determine whether the plaintiff has made out its case by a preponderance of evidence." Cf. Island Serv⸱e Co. v. Perez, 309 F.2d 799 (9th C⸱r.) 1962, Allred v. Sasser, 170 F.2d 233 (7th Cir. 1948).

However, Rule 41(b) also states that, "The Court as trier of the facts may then determine them (i. e. facts) and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."

■ Even in the light most favorable to the plaintiff, he has totally failed, upon the facts and the law, to show any right to relief. This court as trier of the facts has no alternative but to forthwith render judgment against the plaintiff and does hereby grant the defendant's motion for the involuntary dismissal of the plaintiff's action against it.

The defendant is directed to prepare a proper order to this effect for the signature of the court.