## FRED M. SWARTZ *vs.* EDWARDS MOTOR CAR CO.

DECEMBER 12, 1927.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J. This case is before us on defendant's exceptions after a verdict in favor of plaintiff for $1,989.64. This amount represented certain payments received by defendant on account of the purchase by plaintiff of an automobile under a "lease agreement." The action was for breach of warranty concerning the automobile.

The lower court is claimed to have erred (1) in admitting certain evidence; (2) in refusing to grant certain requests to charge; (3) in refusing to direct a verdict for defendant, and (4) in denying defendant's motion for a new trial based upon the ground that the verdict was against the evidence.

The second and fourth grounds can not be sustained. Defendant's requests so far as proper were adequately covered in the charge as given and the claim that the verdict was contrary to the weight of the evidence is found to be unsubstantiated by the trial judge who saw and heard the witnesses. Strong as the testimony in cold type may seem that the car sold to plaintiff was the same as any other car of that model, we can not fail to note that much difficulty of clutch operation immediately following the sale was clearly shown and that defendant's conduct showed repeated attempts to remedy it. The trial justice's rescript has given us the benefit of his observation of the witnesses and experience and the case presents no element to require this court to disapprove the fact finding, both of the jury and the trial justice.

On September 16, 1922, plaintiff bought on "lease agreement" "one 1923 Velie Sport Model Automobile" for $2,050. The car was new. A "Standard" car was taken in trade as part payment and valued at $750. Notes maturing at subsequent dates were given for the balance of the purchase price. The lease contained the usual provisions for retaking the automobile on default in payment of the notes and that all notes should become due if any one

was not paid at maturity. Immediately after the sale, the lease and notes were transferred to the Industrial Trust Co. Several notes were paid as they matured. In May, 1923, a note was not paid and the automobile, being then in defendant's possession for correction of alleged maladjustments, was kept by defendant and later sold to another purchaser.

At the time of plaintiff's purchase he sat in the car as it stood on the floor of defendant's salesroom. He placed his foot upon the clutch, which was a Borg & Beck of standard type used upon all similar models of Velie cars. It was admittedly stiff. The stiffness, it was testified, might arise from a tight spring or varnish in the parts. Considerable pressure was necessary to operate the clutch. Defendant's testimony was that the stiffness of the spring was necessary for a car of this size, weight and capacity for speed. While driving it on the second day following his purchase the car ran off the road and tipped over by reason, as plaintiff claimed, of his inability to operate the stiff clutch in time to avoid hitting a post. Then and at various other times within six months he returned the car to defendant for adjustment or change of clutch. Defendant denied admitting that the clutch was defective or promising to alter the clutch. The jury evidently, and the court certainly, believed plaintiff's testimony that defendant promised to either fix the clutch or install a new one.

In May, 1923, the clutch not having been fixed to plaintiff's satisfaction, he repudiated the contract and declined to pay one of the notes. The present verdict gave plaintiff the right to recover not only payments on notes given for the purchase price but also cost of repairs necessitated by running off the road. The notes paid included one for $442.90 on which judgment was recovered against plaintiff by the Industrial Trust Co. after plaintiff's repudiation of the contract for breach of warranty.

Several of defendant's exceptions relate to alleged error in admitting evidence of the custom of the Industrial Trust

Co. in dealing with such a document as Exhibit 1 (the original lease) to surrender it where a new lease is substituted after six months and new notes are given. The new lease here appears as Exhibit 13. While it is true that this exhibit related to a different car it is equally true that it was substituted with the bank for Exhibit 1. Exhibit 13 came into possession of the bank on March 16, 1923, and thereupon by the custom of the bank Exhibit 1 would have been surrendered to defendant. Defendant produced Exhibit 1 and claimed its receipt from the bank about May 21, 1923. He said he received it from one of the bank officers, Mr. Owen. The latter denied giving it to Edwards or being told to do so. Mr. Owen had no recollection when, how or under what circumstances Edwards came into possession of Exhibit 1. He could only fix the probable time in accordance with the custom above recited. Edwards, Mr. Owen said, was not entrusted with Exhibit 1 to enforce any right of the bank. The purpose for which the evidence of custom was admitted by the trial justice was because it tended to discredit Edward's story as to when he got Exhibit 1 from the bank and that pursuant thereto he was acting for or under instructions from the bank in seizing the car for non-payment of a note for $101 due to the bank on May 16, 1923. We think the court correctly admitted the evidence. The facts were somewhat confusing and the ruling was after a thorough discussion and the reason for it carefully stated. Of the relevancy of a person's habit or custom as showing the doing on a specific occasion of the act which is the subject of the habit or custom there can be no doubt. Wigmore on Evidence, Vol. 1, § 92, p. 325; *State* v. *Shaw*, 58 N. H. 73; *Walker* v. *Barron*, 6 Minn. 508; *Mathias* v. *O'Neill*, 94 Mo. 520. It is for the jury under all the circumstances to assign the probative value to such evidence. There is a latitude allowed the trial justice in determining the relevancy of evidence. *Stevenson* v. *Stewart*, 11 Pa. 307. Unless the determination is clearly incorrect this court will not upset the trial court's decision. In the case

before us the custom would tend to discredit Edwards. That it did so is now one of defendant's complaints. There is no merit to defendant's suggestion that the use of this evidence was improper as presumption upon presumption. Wigmore on Evidence, Vol. 1, § 41, p. 258; *Hinshaw* v. *State*, 147 Ind. 334; *State* v. *Fiore*, 85 N. J. Law, 311.

Exceptions 3 and 4 relate to allowance of proof of cost of repairs for damage to the car after it ran off the road and tipped over. The evidence was conflicting as to whether the cause of the accident was a mechanical defect in the clutch or plaintiff's inattention to his driving. The court said: "If the damage was the natural and probable consequence of an inherent mechanical defect over which plaintiff had no control" the payments for repairs were a legitimate element of plaintiff's damage. This was correct and the jury was properly charged that if the accident was caused by inattention the cost of repairs was not an element of plaintiff's damages. The fact that those repairs were done by, and payments were made to, defendant did not defeat plaintiff's right to recover because the payments were not made with knowledge that the fault was a mechanical one incapable of adjustment. That the payments were voluntary is true but it is not correct to say they were made after knowledge that the defect arose from breach of the warranty of merchantability. The accident occurred on the day following plaintiff's receipt of the car and naturally was attributed to a certain stiffness of operating parts common to any new car. Had such newness only been the cause of the accident defendant would not have been responsible; but, if the cause was mechanical maladjustment, the situation was clearly one over which plaintiff had no control and with knowledge of which he was not chargeable merely by reason of trying to drive the car. The doctrine of the cases of irrecoverable voluntary payments to one known to be in default cited by defendant is inapplicable; nor are the repairs referred to in the lease which plaintiff was obligated to pay such as were necessitated by reason

24

of an accident due to mechanical defects in operating parts of the car. Exceptions 3 and 4 are overruled.

Exception 5 relates to the court's ruling that the payment of the judgment on a note of $442.90 recovered by the Industrial Trust Co. constituted a part of the plaintiff's recoverable damages. As before stated defendant immediately after the sale transferred the notes to the bank for value accompanied by the "lease." At the time of the transfer the bank had no notice of any breach of warranty and as between the bank and the defendant it never could have had, for defendant steadfastly has denied that there were any mechanical defects in the car. To hold that the bank when it sued upon plaintiff's note which it had purchased in the regular course of business could be defeated by a defence of breach of warranty would seriously hamper the transfer of negotiable paper given to pay obligations upon such "lease agreements." The "lease" though its contents are known to the bank does not put the bank on notice that the notes may be repudiated in the hands of an innocent purchaser for value. The maker of the paper knows that the notes are negotiable and the practice of negotiating them is widely prevalent. It would be an unwarranted restriction upon the transfer of commercial paper to hold that the maker could defend against it in the hands of an innocent holder for value before maturity on ground of breach of an implied warranty accompanying a lease like the present one. *Commercial Credit Co.* v. *McDonough Co.*, 238 Mass. 73 (1921). The cases referred to by defendant where the holder was not permitted to recover possessed some element where he was fairly chargeable with knowledge of circumstances which might defeat recovery by any holder of the note. We think plaintiff had no defence to the note for which the bank sued and that the money paid in satisfaction of the judgment therefor was a proper element of plaintiff's damages. Exception 5 is overruled.

Payment of the various notes after September, 1922, was not as a matter of law a waiver of a breach of warranty if

defendant asserted that it had fixed or would cause the clutch to be fixed and continued to retake the car for that purpose. Even if the payments had been made directly to defendant instead of to the bank, there would be a question of fact whether they constituted a waiver under such circumstances. *Lockett* v. *Rawlins*, 78 S. E. 780 (Ga. 1913). The payments actually were made to an innocent purchaser for value before maturity and defendant is in no position to assert that they constituted a waiver of the implied warranty of merchantability.

Defendant asserts that it was entitled to a directed verdict because there was no warranty connected with the sale or if so no breach thereof. On the latter the testimony was conflicting. On the former the jury was instructed that "plaintiff was entitled to receive a car that was merchantable in the sense that it was mechanically reasonably fit for the purpose for which a car of that type and that description was intended to be sold for." This charge was not excepted to and became the law of the case. *Hatch* v. *Sallinger*, 47 R. I. 395.

It is not entirely clear whether defendant questioned then or now questions the correctness of this charge. We do not understand that it seriously insists that plaintiff's inspection prevented the existence of a warranty of merchantability. If such a claim is made it is untenable in this case. The charge was correct. In *Keenan* v. *Cherry & Webb*, 47 R. I. 125, we had occasion to consider the Uniform Sales Act, Gen. Laws 1923, Chap. 305, Sec. 15 (4441) and we said that sub-section 1, relating to the seller's knowledge of "the particular purpose for which the goods are required" might be but was not necessarily knowledge of a specific purpose apart from a general purpose; that the particular purpose might be nothing more than the general purpose to use the article for the purpose for which it was made and that knowledge of such purpose created an implied warranty of merchantability and reasonably might be imputed to the seller. The record here indicates that

plaintiff claimed this was a sale by description under sub-section 2 and that defendant claimed it to be a sale by the patent name of the article under sub-section 4. The trial court did not adopt either view. It followed the views of the *Keenan* case although that case was not referred to and has not been by either counsel in argument before us. We pointed out that *Beggs* v. *Hanley Brewing Co.*, 27 R. I. 385, illustrated the difference between a particular purpose of general and of specific nature and we said: "Under the Sales Act a dealer who sells articles which ordinarily are used in but one way impliedly warrants fitness for use in that particular way unless there is evidence to the contrary. This is only a warranty of merchantability." In the present case it is not denied that the seller knew the buyer was to use the automobile upon the public streets and the jury could reasonably find that the buyer relied upon the seller's skill and judgment that the automobile was mechanically fit for such use. This was the ordinary use of the car sold. While plaintiff bought the specific automobile which he saw before him he did not do so relying upon his own judgment of its mechanical fitness to be operated with safety on the streets. For the latter he had to rely largely upon the seller's skill and judgment. No evidence indicates that plaintiff relied upon his own rather than defendant's knowledge of the mechanism. Sitting in the car and placing a foot on the clutch pedal in the salesroom was not conclusive to show that the buyer did not rely upon the seller's skill and judgment. Such act was only one fact to be considered in determining reliance. There was no error in the court's rulings concerning an implied warranty and its refusal to direct a verdict for defendant.

All of defendant's exceptions are overruled and the case is remitted to the Superior Court for the entry of judgment on the verdict.

*Cooney & Cooney, Frank H. Bellin,* for plaintiff.
*Knauer & Fowler, Lawrence F. Nolan,* for defendant.